# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                    Civ. No. 02-856 JC/WDS
                                                        Cr. No. 01-1474 JC

RAFAEL ROMERO-MARIN,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED
## FINDINGS AND RECOMMENDED DISPOSITION[1]

    1.     This is a proceeding on a Petition to Vacate Sentence Pursuant to 28 U.S.C. §2255. On November 1, 2001, Petitioner Rafael Romero-Marin pled guilty to a federal information charging him with a violation of 8 U.S.C. §1326(a)(1) and (2), that being Reentry of a Deported Alien Previously Convicted of a Felony. On February 26, 2002, he was sentenced to a term of one year and one day imprisonment, and a two-year term of unsupervised release.

    2.     In his §2255 petition, Petitioner alleges the following: 1) that his due process rights were violated by Immigration and Naturalization Service ("INS") when he was not told by the INS judge at his deportation hearing that he could appeal the deportation or apply for a waiver of deportation; 2) that he is entitled to relief and/or suspension from deportation under INA §212 (h) and §244(a); and, 3) that his attorney provided ineffective assistance of counsel when failed to

---

[1] Within ten (10) days after a party is served with a copy of the "Magistrate Judge's Proposed Findings and Recommended Disposition" (the "Proposed Findings") that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections in the United States District Court to the Proposed Findings. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the Proposed Findings. If no objections are filed, no appellate review will be allowed.

collaterally attack the prior deportation order or file a brief on the merits of the case.

## BACKGROUND

3.     On January 22, 1997, Petitioner was encountered in the Contra Costa County, California jail by an INS official after being arrested for traffic violations. At that time he admitted his identity, alienage and illegal entry. Petitioner was taken into custody by INS sometime thereafter. After requesting relief from deportation, Petitioner was released from INS custody on February 6, 1997, on a $500 cash bond provided by his spouse, Maria Romero. At that time, Petitioner reported his current address to INS and was provided with a change of address form.

4.     Petitioner was subsequently arrested on May 11, 1997. On May 30, 1997, he was sentenced by a California court to 36 months probation, 270 days in jail and a fine and restitution for Driving Under the Influence of Alcohol with Prior Specific Convictions.

5.      On July 31, 1997, Petitioner failed to appear at a hearing scheduled before an Immigration Judge for the purpose of hearing the merits relative to Petitioner's request for relief from deportation. At the hearing, the Immigration Judge found that no exceptional circumstances were given in regard to Petitioner's failure to appear at the hearing and further, that Petitioner had abandoned any and all claims for relief from deportation. It was ordered that Petitioner be deported from the United States.

6.     On December 4, 1997, a notice was sent to Petitioner at the address Petitioner had previously provided, informing him that following a hearing he was found deportable and that an order of deportation had been entered. The notice directed Petitioner to report to a United States Immigration Officer on January 20, 1998 ready for deportation. On that same date a Warrant of Removal/Deportation was issued for Petitioner's deportation. Petitioner failed to appear for deportation on January 20, 1998.

7.      On January 28, 1998, a Notice-Immigration Bond Breach was sent to Petitioner's spouse at the address previously provided to INS informing her that the bond she posted was breached for failure to deliver Petitioner for deportation on January 20, 1998.

8.      On August 11, 2001, Petitioner was arrested in Glenwood Springs, Colorado, on multiple charges. On August 30, 2001, Petitioner was deported.

9.      On September 9, 2001, Petitioner was arrested for illegal reentry after deportation and on November 1, 2001, he entered a plea of guilty to those charges.

10.     At the plea hearing, Petitioner was represented by Assistant Federal Public Defender Dennis Candelaria. U.S. Magistrate Karen Molzen conducted the hearing and informed Petitioner of his rights and questioned him regarding his understanding of those rights. At one point, Petitioner attempted to begin a dialog with Judge Molzen regarding his deportation. After a discussion with Petitioner and his counsel regarding this issue, Judge Molzen determined that Petitioner needed to spend some additional time with his counsel discussing the plea agreement and that she wanted to question the Petitioner further and in more detail to make sure that she addressed all of his questions and concerns before she accepted his plea (she was taking a plea from two others at the same time). Judge Molzen then excused Petitioner and encouraged him to confer with Mr. Candelaria regarding his decision to plead guilty and the ramifications of such a plea. Plea Hearing Transcript ("PH"), p. 17, l. 16 – p. 18, l.21. In doing so, Judge Molzen stated:

> All right. Because, Mr. Romero, it's very important that you understand that there are consequences, but even – you have a choice of whether you want to plead guilty, but if you plead not guilty, then you have to go to a trial. And those same elements are going to apply, whether you talk to me here today or at that trial, that the Government is required to prove to the jury. So why don't you talk to Mr. Candelaria a little bit more. I want to set this one down by itself, separately, maybe at the end of the calendar on Wednesday, so we'll make sure and address all of your concerns, Mr. Romero, all right?

PH, p. 18, ll. 10 - 21.

11.     When the Court reconvened its questioning of Petitioner, Petitioner was able to immediately respond to Judge Molzen's questions without hesitation. He stated affirmatively that the plea agreement had been read to him in Spanish, that he discussed each and every term with his attorney and that he was satisfied with Mr. Candelaria's advice and representation. PH, p. 21, ll. 14 – 23. During the hearing, Petitioner specifically acknowledged that he was agreeing to give up any right that he might have to a hearing before an Immigration official or judge. PH, p. 22, ll 18 - 23.

12.     In his written plea agreement, Petitioner agreed that he would not collaterally attack or contest in any manner reinstatement of the prior deportation/removal order, agreed to waive all challenges, constitutional or otherwise, to reinstatement of his prior deportation/removal order and waived any right he may have to a hearing before an immigration judge or any other authority on the question of his removal from the United States. Plea Agreement, November 1, 2001, ¶7.c.

13.     Judgment was entered on March 14, 2002. Petitioner did not file a direct appeal but on July 16, 2002 filed two documents, each titled Petition Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence.

## DISCUSSION

14.     I will address Petitioner's claim in reverse order beginning with his claim that he was denied effective assistance of counsel when his attorney failed to collaterally attack the prior deportation order or "file a brief on the merits."

15.     "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1994). "A guilty plea represents a break in the chain of events which has preceded it in the criminal process." *U.S. v. Davis*, 900 F.2d 1524, 1526 (10th). "When a

criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards [required by the Sixth Amendment]. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

16. In this case, Petitioner's claims are procedurally barred because he did not make any direct appeal from his sentence. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. U.S.,* 523 U.S. 614, 622 (1998) (*cit. omitted*). A defendant may establish cause for procedural default by showing he received ineffective assistance of counsel. *United States v. Cook,* 45 F.3d 388, 392 (10th Cir. 1995).

17. The "cause and prejudice" standard applies to *pro se* prisoners just as it applies to the prisoners represented by counsel. *Watson v. State of New Mexico*, 45 F.3d 385, 388 n.3 (10th Cir. 1995).

18. An attorney's error provides cause to excuse a procedural default only if the error amounts to constitutionally ineffective assistance of counsel. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991). The two-prong test announced in *Strickland v. Washington*, 466 U.S. 668 (1984) governs ineffective assistance of counsel claims. *E.g. Mayes v. Gibson,* 210 F.3d 1284 (10th Cir.). Petitioner must show both (1) that counsel's performance was deficient and (2) that this deficiency prejudiced his defense. *Strickland,* 466 U.S. at 687. An ineffective assistance of counsel claim fails if either of the *Strickland* prongs are not met.

19. Petitioner must first show that counsel's representation was "objectively

unreasonable." *E.g. Clayton v. Gibson,* 199 F.3d 1162, 1177 (10th Cir. 1999). In doing so, he must overcome the strong presumption that counsel's conduct falls within the wide range of competence demanded of attorneys in criminal cases. *Gillette v Tansy*, 17 F.3d 308, 310 (10th Cir. 1994). This Court must consider all the circumstances, making every effort to "eliminate the distorting effects of hindsight," and to "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable, not merely wrong." *Moore v. Gibson,* 195 F.3d 1152, 1178 (10th Cir. 1999). Moreover, the Court is mindful that "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Stano v. Dugger,* 921 F.2d 1125, 1151 (11th Cir. 1991).

20.     Petitioner must also demonstrate that he was prejudiced as a result of his counsel's deficient performance. To demonstrate prejudice, Petitioner must show that there is a reasonable probability that, but for counsel's errors "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 559 (1985). A petitioner's mere assertion that he would have opted for trial is not enough to satisfy the prejudice prong.

21.     As pointed out by Respondents, Petitioner devotes only one sentence to this issue. Petitioner states that his counsel never filed any motion collaterally attacking the prior deportation order and then asks the question as to whether Petitioner received ineffective assistance of counsel when his counsel did not file a brief on the merits of the case. Petitioner never directly makes a specific claim that he did not receive effective assistance of counsel. He does not provide any argument, specificity or legal authority to support such a claim. He makes no showing that Mr.

Candelaria's performance was objectively unreasonable nor that he was prejudiced as a result of counsel performance. Petitioner does not even attempt to show that but for his counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. Furthermore, Petitioner stated at the plea hearing that he was satisfied with Mr. Candelaria's advice and representation. PH, p. 21, ll. 21-23.

22. As Petitioner does not allege that his plea of guilty was involuntary or unintelligent, his claim regarding ineffective assistance of counsel must be denied.

23. Petitioner also alleges that his due process rights were violated by the INS when he was not told by the INS Judge at his deportation hearing that he could appeal the deportation order or apply for a waiver of deportation. Petitioner further alleges that he is entitled to relief from deportation under INA §212(h) and §244(a). These claims by Petitioner fail for several reasons. First and foremost, as noted earlier and stated by the Supreme Court, "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. at 267. That is precisely what Petitioner is doing here.

24. During his plea hearing and in his written plea agreement, Petitioner acknowledged that he was waiving any right he may have had to a hearing before an immigration judge or any other authority on the question of his removal from the United States. "If guilty pleas are to continue to play an important role in our system of criminal justice, *see Hill v. Lockhart*, 474 U.S. 52 (1985), their finality cannot be sacrificed whenever a defendant comes to regret his plea after sentencing." *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988).

25. Additionally, "[Section] 2255 is not available to test the legality of matters which

should have been raised on appeal." *United States v. Allen*, 16 F.3d 377 (10th Cir. 1994). A defendant who fails to present an issue on direct appeal is barred from raising the issue in a §2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. *United States v. Allen*, 16 F.3d 377 (10th Cir. 1994).

26. In this case, Petitioner never appealed the original deportation order that was entered on January 28, 1998, nor did he appeal the judgment that was entered in this case on March 14, 2002. Moreover, Petitioner has not made any showing of cause and prejudice to explain his failure to appeal.

27. Finally, a defendant charged with illegal reentry under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she failed to exhaust administrative remedies that were available during the deportation proceeding, including direct appeal of the deportation order. 8 U.S.C. § 1326(d)(1); *United States v. Estrada-Torres*, 179 F.3d 776, 780 (9th Cir.1999). 8 U.S.C. §1326(d), expressly provides that "an alien may not challenge the validity of the deportation order" unless the alien demonstrates (1) that he has "exhausted any administrative remedies that may have been available to seek relief against the order;" (2) that the "proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;" and, (3) that "the entry of the order was fundamentally unfair."

28. Petitioner has failed to demonstrate that he has exhausted any administrative remedies, that the proceedings improperly deprived him of the opportunity for judicial review and the entry of the order was fundamentally unfair. Accordingly, just as Petitioner's claim regarding ineffective of counsel fails, so do the remaining claims made by Petitioner.

29. Based on the foregoing, I recommend that Petitioner's application be denied and

that this cause be dismissed with prejudice.

_____
UNITED STATES MAGISTRATE JUDGE